IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 19-cr-00035-CMA-1

UNITED STATES OF AMERICA,

 Plaintiff,

v.

JORGE RAMIREZ-ARENAS,

 Defendant.

## ORDER DENYING MOTION TO DISMISS INDICTMENT

This matter is before the Court on Defendant Jorge Ramirez-Arenas's Motion to Dismiss Indictment. (Doc. # 20.) For the reasons discussed herein, the Court denies Mr. Ramirez-Arenas's motion.

### I.   FACTS AND PROCEDURAL HISTORY

The Government indicted Mr. Ramirez-Arenas, whom it alleges is "an alien present in the United States illegally and unlawfully," on two counts related to unlawfully obtaining and possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(5) and 922(a)(6), on January 24, 2019. (Doc. # 1.)

Mr. Ramirez-Arenas was arrested and made his initial appearance before United States Magistrate Judge N. Reid Neureiter on February 1, 2019. (Doc. ## 4–5.) The Government did not request a ten-day detention of Mr. Ramirez-Arenas to permit

deportation under 18 U.S.C. § 3142(d)(1)(b) but rather asked to continue the Court's determination on Mr. Ramirez-Arenas's detention.  See (Doc. # 5.)

On February 6, 2019, United States Magistrate Judge S. Kato Crews conducted a detention hearing and, after hearing argument from both parties, ordered that Mr. Ramirez-Arenas be released on bond after an inspection of his residence under provisions of the Bail Reform Act ("BRA").  (Doc. # 10.)  Pursuant to Magistrate Judge Crews's order, Mr. Ramirez-Arenas was released on February 11, 2019, on an unsecured bond of $2,000 and subject to other conditions.  (Doc. ## 13–15.)  The Government did not seek review of Magistrate Judge Crews's order to release Mr. Ramirez-Arenas.

The Bureau of Immigration and Customs Enforcement ("ICE") took custody of Mr. Ramirez-Arenas upon his release on February 11, 2019, pursuant to 8 U.S.C. § 1226(a).  (Doc. # 20 at 2; Doc. # 28 at 2.)  The following day, February 12, 2019, ICE transported Mr. Ramirez-Arenas to the GEO Detention Facility in Aurora, Colorado, and served him with a Notice of Custody Determination (Doc. # 20-1) and a Warrant for Arrest of Alien (Doc. # 20-2).  Mr. Ramirez-Arenas requested "an immigration judge review of [ICE's] custody determination" when he signed the Notice of Custody Determination that day.  (Doc. # 20-1.)  ICE initiated removal proceedings against him. (Doc. # 28 at 2.)

Having requested review of his detention by ICE, Mr. Ramirez-Arenas appeared in immigration court on February 21, 2019.  (*Id*.; Doc. # 20 at 3.)  The Government opposed any release of Mr. Ramirez-Arenas, and Mr. Ramirez-Arenas presented letters

and made argument in support of release. (Doc. # 20 at 3.) United States Immigration Judge Elizabeth McGrail ordered that Mr. Ramirez-Arenas be released from custody if he posted a $2,000 bond. (Doc. # 20-4); see 8 U.S.C. § 1226(a)(2)(A). The following day, February 22, 2019, a third party posted the $2,000 bond for Mr. Ramirez-Arenas, and ICE released him from the GEO Detention Facility that evening. (Doc. # 20 at 3.)

Mr. Ramirez-Arenas filed the Motion to Dismiss Indictment presently before the Court on February 26, 2019. (*Id.*) The Government filed its Response on March 28, 2019. (Doc. # 28.) A four-day jury trial in this matter is scheduled to begin on June 17, 2019. (Doc. # 23.)

## II.     RELEVANT STATUTORY AUTHORITY

Mr. Ramirez-Arenas argues that the Government ran afoul of the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141, *et seq.*, when it used its immigration enforcement authority to detain him after he had been released on bond in this criminal matter and to then "impose additional conditions on [him] in order for him to obtain" his release from detention at the GEO Detention Facility. (Doc. # 20 at 4.) His argument assumes that the BRA conflicts in part with the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq*. (*Id.*)

### A.     THE BAIL REFORM ACT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Ailon-Ailon*, 874 F.3d 1334, 1336 (10th Cir. 2017) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). The BRA "sets forth one such exception." *Id.* It dictates that a defendant may be subject to pretrial

detention if a judicial offer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

"Congress chose not to exclude removable aliens for consideration for release or detention in criminal proceedings." *Ailon-Ailon*, 874 F.3d at 1338 (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015)). It did, however, "set forth" in Section 3142(d) of the BRA "'specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent resident'" *Id.* (quoting *Santos-Flores*, 794 F.3d at 1091); 18 U.S.C. § 3142(d). Under Section 3142(d), "if a judicial officer determines that (a) the defendant is not a citizen of the United States or lawfully admitted for permanent residence, and (b), he may flee or pose a danger to any other person or the community, then the judicial officer 'shall order the detention of such person for a period of not more than ten days.'"[1] *United States v. Rangel*, 318 F. Supp. 3d 1212, 1218 (E.D. Wash. 2018)

---

[1] Section 3142(d) provides, in full:
    (d) **Temporary detention to permit revocation of conditional release, deportation, or exclusion**.--If the judicial officer determines that--
        (1) such person--
            (A) is, and was at the time the offense was committed, on--
                (i) release pending trial for a felony under Federal, State, or local law;
                (ii) release pending imposition or execution of sentence, appeal of sentence or conviction, or completion of sentence, for any offense under Federal, State, or local law; or
                (iii) probation or parole for any offense under Federal, State, or local law; or
            (B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20)); and

(quoting 18 U.S.C. § 3142(d)).  During this detention period of or less than ten days, "ICE may elect to take the defendant into immigration custody to pursue immigration proceedings." *Id.* (citing 18 U.S.C. § 3142(d)); *Ailon-Ailon*, 875 F.3d at 1338.  If, however, ICE "fails or declines to take such person into custody during that period, such person shall be treated in accordance with other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings."  18 U.S.C. § 3142(d).

Section 3142(d) is the only provision of the BRA that expressly refers to persons who are not citizens of the United States.  "There is nothing else in the BRA that places any special or additional conditions on persons who are not citizens." *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Or. 2012).  For example, as the Court of Appeals for the Tenth Circuit has observed, "although Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable aliens on that list." *Ailon-Ailon*, 875 F.3d at 1338 (citing 18 U.S.C. § 3142(e)(3)).  Similarly, though Congress "expressly list[ed] the factors that a court

---

        (2) such person may flee or pose a danger to any other person or the community;

such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings. If temporary detention is sought under paragraph (1)(B) of this subsection, such person has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence.

18 U.S.C. § 3142(d).

should consider when determining whether a particular defendant should be released under pretrial supervision or confined pending trial, . . . alien status is not a listed factor." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174 (citing 18 U.S.C. § 3142(g)).

**B.    THE IMMIGRATION AND NATIONALITY ACT**

The INA "contains the basic body of immigration law in the United States." *Id.* Among other things, the INA charges the Secretary of the Department of Homeland Security ("DHS") with "the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws related to the powers, functions, and duties conferred upon the President [or] Attorney General." 8 U.S.C. § 1103(a)(1).

Section 1226 of the INA, 8 U.S.C. § 1226, "governs the pre-removal detention of an alien." *Valerga v. Holder*, No. 13-cv-03014-PAB, 2014 WL 103551, *3 (D. Colo. Jan. 9, 2014). "While removal proceedings are in progress, most aliens may be released on bond or paroled." *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). Relevant here, Section 1226(a): [2]

---

[2] Section 1226(a) provides:
**(a) Arrest, detention, and release**
On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
    (1) may continue to detain the arrested alien; and
    (2) may release the alien on--
        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
        (B) conditional parole; but
    (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise

6

> authorizes immigration officials to arrest and to detain or release an alien pending a decision on whether the alien is to be removed from the United States. An alien has the right under § 1226(a) to a hearing before an immigration judge to determine whether he or she should be released on bond during the removal process.

*Valerga*, 2014 WL 103551 at *3; *Sanchez-Penunuri v. Longshore*, 7 F. Supp. 3d 1136, 1152 (D. Colo. 2013). The immigration judge determines whether an alien should be detained or released on bond "based on an individualized determination of danger and flight potential at [the] bond hearing." *Baquera v. Longshore*, 948 F. Supp. 2d 1258, 1261 (D. Colo. 2013). Where the immigration judge concludes that release of an alien pending the decision on his or her removal is warranted, the bond must "at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." 8 U.S.C. § 1226(a)(2)(A).

### III. **DISCUSSION**

"The interplay between the BRA and the INA has caused both confusion and tension" in this matter and in numerous other cases throughout the United States. *Trujillo-Alvarez*, 900 F. Supp. 2d at 1176.

Mr. Ramirez-Arenas argues that pursuant to Section 3142(d) of the BRA, "once a court determines that the BRA requires a defendant's release and sets the conditions of that release, the Executive Branch cannot attempt an end-run around that decision by taking the defendant into immigration custody" under the authority of the INA. (Doc. # 20 at 5.) Nor may the Executive Branch "impose additional conditions of release that

---

> would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226.

7

are different from, and more onerous than, the conditions [for pre-trial release] set by the district court under the BRA," he continues. (*Id.*) In short, Mr. Ramirez-Arenas asserts that the Court's authority to release him from pre-trial detention under the BRA in this criminal case "supplants the [G]overnment's ability to detain him under the INA." (*Id.* at 7) (quoting *United States v. Vasquez-Benitez*, No. 18-cr-00275-RCL (D.D.C. Sept. 26, 2018), *rev'd*, 919 F.3d 546 (D.C. Cir. 2019)). He asks the Court to dismiss with prejudice the instant Indictment because "it is the Executive who decided to proceed as it did." (*Id.* at 13.)

The Court disagrees with Mr. Ramirez-Arenas's argument. It is premised on the proposition that Section 3142(d) of the BRA "precluded DHS/ICE from taking custody of [him], an alleged noncitizen who was granted bond under the BRA." (*Id.*) However, Section 3142(d) of the BRA "applies only if a 'judicial officer determines that . . . . [the defendant] may flee or pose a danger to any other person or the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019) (quoting 18 U.S.C. § 3142(d)(2)). As the Court described above, the Government did **not** request that Mr. Ramirez-Arenas be detained under Section 3142(d) to permit deportation, and Magistrate Judge Crews decided that Mr. Ramirez-Arenas was **not** a flight risk or a danger to the community. *See* (Doc. ## 5, 10.) Mr. Ramirez-Arenas himself notes in his Motion to Dismiss that he "was **not** detained via Section 3142(d)." (Doc. # 20 at 10) (emphasis added). Section 3142(d) does not apply to his case. The Court therefore rejects his argument that pursuant to Section 3142(d), the BRA must supersede the INA.

Though the Court of Appeals for the Tenth Circuit has not confronted Mr. Ramirez-Arenas's precise argument, other circuits have squarely rejected it. *Vasquez-Benitez*, 919 F.3d at 554; *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018). For example, in *Vasquez-Benitez*,[3] the Court of Appeals for the District of Columbia reversed the district court's order holding that, pursuant to Section 3142(d) of the BRA, ICE could not detain the defendant after he was ordered released before the trial in his criminal case and rejected the court's conclusion "when the U.S. Attorney chooses to bring criminal charges against a defendant subject to removal under the INA, 'a judicial order under the [BRA] provides the sole avenue for detaining [the] defendant while the charges are pending.'" 919 F.3d at 552–54. The defendant in *Vasquez-Benitez* was charged with illegal reentry in violation of 18 U.S.C. § 1326,[4] and at his initial appearance, the magistrate judge "declined to detain [the defendant] pending trial" under Section 3142 of the BRA because the Government had not convinced the court that the defendant posed a danger or presented a high risk of flight. *Id.* at 549. Nor was the defendant temporarily detained to permit his deportation under Section 3142(d) specifically. The magistrate judge ordered that the defendant be released from the custody of the U.S. Marshal "subject to restrictive conditions." *Id.*

---

[3] Mr. Ramirez-Arenas relies on the district court's order in *Vasquez-Benitez*. *See* (Doc. # 20 at 7.) However, as the Court explains, the Court of Appeals for the District of Columbia overruled that order subsequent to Mr. Ramirez-Arenas's filing of his Motion to Dismiss. *Vasquez-Benitez*, 919 F.3d at 554.

[4] Unlike the defendant in *Vasquez-Benitez*, Mr. Ramirez-Arenas is not charged with illegal reentry. But as Mr. Ramirez-Arenas himself explains, "[t]hat is a distinction without difference." (Doc. # 20 at 7 n.5.) *See United States v. Boutin*, 269 F. Supp. 3d 24 (E.D.N.Y. 2017) (applying the holding in an illegal reentry case to a case in which the defendant was charged with illegal reentry).

Upon the defendant's release, "ICE . . . took custody of him." *Id.* The defendant subsequently filed a motion to compel his release from ICE custody or, alternatively, to dismiss the criminal charge against him with prejudice. *Id.* at 550. The district court granted the defendant's motion, holding that pursuant to Section 3142(d), "ICE loses its authority to civilly detain an illegal alien pending removal under the INA if that alien is charged with a crime and the court finds there is no need to detain him pending trial under the BRA." *Id.*

The Court of Appeals for the District of Columbia reversed the district court's holding. *Id.* at 552–54. First, it held that Section 3142(d)—the section of the BRA upon which the defendant's argument and the district court's holding were based—did not apply to the case because "the district court decided that [the defendant] [was] not a flight risk or a danger to the community" and thus did not temporarily detain him under Section 3142(d). *Id.* at 552–53. As to the defendant's and the district court's reliance on the principle "that a precisely drawn, detailed statute," such as Section 3142(d) of the BRA, "preempts more general remedies," including the INA, "even where both literally apply," the Court of Appeals stated:

> There is, however, another principle that should have guided its resolution of the antecedent question whether two statutes "literally apply"—that is, "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." The Congress has never indicated that the BRA is intended to displace the INA.

10

*Id.* at 553 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974); citing 18 U.S.C. § 3142).  Second, the Court of Appeals held that the BRA and the INA do not "conflict more generally":

> Individuals are detained under the BRA under authority separate from that used to detain individuals under the INA. A criminal defendant is detained under the BRA to ensure his presence at his criminal trial and the safety of the community. An illegal alien is detained under the INA to facilitate his removal from the country. ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial.

*Id.* (citing 18 U.S.C. § 3142(e)(1); 8 U.S.C. § 1231(a)(2)).  Finally, the Court of Appeals "acknowledged that some district courts over the past several years have held . . . that the BRA and the INA conflict in cases like this one," citing the same cases on which Mr. Ramirez-Arenas relies, but it found more persuasive the opinion of the Court of Appeals for the Sixth Circuit in *Veloz-Alonso*, 910 F.3d at 270, which "recently became the first appellate court to weigh in on the issue and . . . found 'no conflict between the BRA and INA in the matter in which the *Trujillo-Alvarez*[, 900 F. Supp. 2d at 1179,] cases ruled." *Vasquez-Benitez*, 919 F.3d at 553–54.  The Court of Appeals for the District of Columbia's reasoning in *Vasquez-Benitez* and the Court of Appeals for the Sixth Circuit's similar analysis in *Veloz-Alonso* apply to the Motion to Dismiss now before this Court because Mr. Ramirez-Arenas asserts that same argument that the Courts of Appeals rejected in those matters.

*Vasquez-Benitez* and *Veloz-Alonso* are also consistent with the Tenth Circuit's implicit statement in *Ailon-Ailon*, 874 F.3d at 1339–40, that criminal proceedings and removal proceedings against a defendant may proceed concurrently.  Though the Tenth

11

Circuit was concerned with different factual circumstances than those presented here,[5] it interpreted the structure of the BRA and text of Section 3142 specifically and reversed the district court's order that the defendant be detained prior to his trial. *Id.* at 1335–40. It remanded the case to the district court "with instructions to set conditions for [the defendant's] release pending trial." *Id.* at 1340. Importantly, the Tenth Circuit explicitly ordered: "When the conditions of release have been met, **the United States Marshals shall release [the defendant] to ICE custody**, pursuant to the detainer." *Id.* (emphasis added). The Court agrees with the Government that the Tenth Circuit's opinion in *Ailon-Ailon* indicates that it "does not perceive the irreconcilable conflict between the BRA and INA described by the defendant, or any conflict whatsoever." (Doc. # 28 at 5.) Rather, the Tenth Circuit in *Ailon-Ailon* "explicitly contemplates parallel proceedings, and by its order, compels them." (*Id.*)

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Ramirez-Arenas's Motion to Dismiss Indictment. (Doc. # 20.)

---

[5] As the Government notes, the defendant in *Ailon-Ailon* was subject to an outstanding order of removal, and ICE was thus required by Section 1231 of the INA to detain him pending removal. *Ailon-Ailon*, 875 F.3d at 1339; *see* (Doc. # 28 at 5–6.) Mr. Ramirez-Arenas is not subject to a removal order, and his removal proceedings are not governed by Section 1231. This is a distinction without difference however. The Tenth Circuit's analysis in *Ailon-*Ailon did not at all address Section 1231. *See Ailon-Ailon*, 875 F.3d at 1338–40.

DATED: May 22, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge